| | |
|---|---|
| UNITED STATES DISTRICT COURT | |
| FOR THE EASTERN DISTRICT OF CALIFORNIA | |

| | |
|---|---|
| SATRONA RASAY BROOMFIELD, | No. 2:16-cv-1613-EFB |
| Plaintiff, | |
| v. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties' cross-motions for summary judgment are pending. ECF Nos. 15 & 19. For the reasons discussed below, plaintiff's motion is denied and the Commissioner's motion is granted.

**I.    Background**

On March 6, 2012, plaintiff filed applications for DIB and SSI, alleging that she had been disabled since September 15, 2011. Administrative Record ("AR") 252-54. Her application was denied initially and upon reconsideration. *Id.* at 172-76, 179-83. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (*id.* at 184-85), and hearings in this case were held on July 15, 2014 and January 6, 2015. *Id.* at 34-99. Plaintiff was represented by a non-attorney at each hearing. *Id.*  A vocational expert testified at the latter hearing. *Id.* at 78-82.

1

The ALJ issued a decision on February 9, 2015 and found that, based on the DIB application, plaintiff was not disabled under sections 216(i) and 223(d) of the Act.[1] *Id.* at 28. The ALJ also found that, based on the SSI application, plaintiff was not disabled under section 1614(a)(3)(A) of the Act. *Id.* He made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2013.

   * * *

2. The claimant has not engaged in substantial gainful activity since September 15, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

\* \* \*

3. The claimant has the following severe impairments: degenerative disc disease of the lumbosacral spine, status post lumbar fusion, including spondylolistheses with herniated nucleus pulposus at L4-5, and herniated nucleus pulposus at L5-S1; osteitis condensans ilii of the bilateral hips; chronic obstructive pulmonary disease (COPD); obesity; and major depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is limited to no more than occasional climbing of ramps or stairs. She must avoid climbing ladders, ropes, or scaffolds. She can frequently balance or stoop, but she must avoid kneeling, crouching, or crawling. She must avoid exposure to workplace hazards, such as unprotected heights and moving mechanical parts. She can tolerate no more than occasional exposure to vibration. She can perform no more than simple routine tasks consistent with unskilled work, as defined in the Dictionary of Occupational Titles.

\* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\* \* \*

7. The claimant was born in 1972 and was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

\* \* \*

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

\* \* \*

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR 404, Subpart P, Appendix 2).

* * *

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

* * *

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 15, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.* at 17-28.

Plaintiff's request for Appeals Council review was denied on June 14, 2016, leaving the ALJ's decision as Commissioner's final decision. *Id.* at 1-3.

## II. <u>Legal Standards of Review</u>

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### III. Analysis

Plaintiff argues that (1) the ALJ erred by improperly discounting plaintiff's testimony regarding the limitations caused by her symptoms and medications; and (2) the ALJ's finding that plaintiff had moderate limitations in concentration, persistence, and pace compelled a disability finding. The court finds, for the reasons stated below, that the ALJ properly assessed plaintiff's subjective allegations and plaintiff's moderate limitations in concentration, persistence, and pace do not compel a disability finding.

#### A. Assessment of Plaintiff's Subjective Testimony

##### 1. Relevant Legal Standards

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of impairment, the ALJ may then consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. *See id.* at 345-347. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan*, 169 F.3d at 599.

## 2. **Background**

The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." AR at 23. The ALJ offered several rationales for discounting plaintiff's subjective complaints. First, he found that plaintiff's subjective complaints were not consistent with objective medical evidence. *Id.* at 25. The ALJ cited treatment notes which, overall, indicated that plaintiff's clinical presentation cut against the existence of disabling pain symptoms. Specifically, at treatment visits on January 17th and June 9th of 2014, plaintiff was able to walk normally and clinical observations indicated that she had normal motor strength and muscle tone. *Id.* at 658, 644. The ALJ noted that, at the June visit, plaintiff was able to stand on her toes and heels. *Id.* at 644. Between January and June, however, treatment notes from two visits (March and May) indicated that plaintiff's gait was abnormal. *Id.* at 647-48, 651. The regression documented at these visits was not identical. In March, muscle atrophy and lower extremity weakness were noted. *Id.* at 651. In May, by contrast, plaintiff's muscle bulk and tone were normal, as was her muscle strength. *Id.* at 648. Regardless and, as noted above, by June plaintiff was walking normally. *Id.* at 644. Finally, the last available treatment notes in July and August of 2014 did not make any relevant findings[2] regarding the symptoms at issue here. *Id.* at 634-38.

/////

/////

/////

---

[2] Treatment notes from the July visit indicate that plaintiff was "tearful" about her lower back pain. AR at 636. That plaintiff has some degree of chronic back pain is not at issue, however. The ALJ specifically noted as much when he found that plaintiff only had the residual functional capacity for sedentary work. *Id.* at 22-23. The fact that she was "tearful" at this visit is not a medical finding.
At the August visit, it was noted that plaintiff was walking with a cane. *Id.* at 634. The medical records do not, however, indicate that she was ever prescribed a cane or that any provider thought one was necessary for the plaintiff to ambulate.

6

Next, the ALJ took note of the fact that plaintiff's back symptoms had persisted "off and on" for years, stretching beyond the alleged onset date to approximately 2003. *Id.* at 26. He emphasized that plaintiff was able to manage her back issues and engage in substantial gainful activity as recently as 2007. *Id.*

Finally, the ALJ cited plaintiff's daily activities. He noted that she: (1) remained the primary caretaker for her five year old son; (2) managed personal care, household chores, and shopping tasks; (3) she was able to walk 200 to 300 yards in order to accompany her son to the school bus; and (4) told her provider in September of 2013 that she could walk "longer distances" with a TENS unit. *Id.* The ALJ also emphasized lay witness evidence from plaintiff's mother which suggested that plaintiff was independent in caring for herself and her child and that her chronic pain did not interfere with her concentration. *Id.*

### 3. **Analysis**

The court finds that the ALJ provided sufficient reasons for discounting plaintiff's testimony regarding her symptoms and limitations. As noted in the foregoing section, the most recent diagnoses articulated by plaintiff's treatment notes indicated that she was capable of walking normally and that her motor strength was normal. *Id.* at 658, 644. It is settled law in this circuit that the lack of objective medical evidence supporting a plaintiff's claims may support an ALJ's adverse credibility finding. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2003). For her part, plaintiff argues that rejecting pain testimony as inconsistent with medical evidence is not a clear and convincing reason for discounting her claims. ECF No. 15 at 20. She cites *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) for the proposition that an ALJ acts improperly where he or she discounts a plaintiff's excess pain testimony because it is "out of proportion to the medical evidence." In *Gonzalez*, however, the court took issue with the ALJ relying *exclusively* on the inconsistency between the claimant's subjective complaints and the medical evidence. *Id.* In so doing, it emphasized that the ALJ had taken note of some of the claimant's daily activities – walking one to one and a half miles twice a day and watching sports while alternating sitting and standing – but failed to link these daily activities to a conclusion that the claimant's excess pain testimony was not credible. *Id.* The *Gonzalez* court

ultimately remanded the matter for further administrative proceedings after finding that the ALJ had failed to "fully articulate" his reasons for refusing to credit the claimant's testimony. *Id.* By contrast, the ALJ's decision in this case did not rely solely on the objective medical evidence in assessing plaintiff's credibility.

Instead, the ALJ also properly emphasized the inconsistency between plaintiff's daily activities and her subjective claims. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) ("[I]f the claimant engages in numerous daily activities involving skills that could be transferred to the workplace, an adjudicator may discredit the claimant's allegations upon making specific findings relating to the claimant's daily activities."). Plaintiff's testimony indicated that she remained capable of: (1) being the primary caretaker for her five-year old son; (2) completing household chores and grocery shopping; (3) walking her son approximately two to three-hundred yards to the bus stop and standing with him for about five minutes while awaiting the bus; and (4) driving to a family member's house "every other day." AR at 51-58. Additionally, plaintiff's mother submitted a "Third Party Function Report" in 2012 which stated that: (1) other than some difficulty in putting on her shoes and socks, plaintiff had no problems in managing her personal care; (2) plaintiff was able to prepare three meals on a daily basis; (3) plaintiff was capable of washing dishes and clothes, cleaning bathrooms, and mopping without "help or encouragement;" (4) plaintiff was capable of walking and driving herself places; and (5) plaintiff was able to shop for food and clothes without assistance. *Id.* at 316-19. Finally, the ALJ specifically linked plaintiff's daily activities to a finding that "in spite of [plaintiff's] back pain, . . . she can reasonably sustain the standing and walking requirements of sedentary work." *Id.* at 26.

Plaintiff argues that the ALJ's discussion of her daily activities failed to account for her reliance on prescription drugs for pain management or the periods of supine rest required after preparing her son for school. ECF No. 15 at 22. As the Commissioner points out in her cross-motion, however, plaintiff never testified that she actually required such a rest. ECF No. 19 at 13. The relevant testimony:

> Q Your son's on his way to kindergarten. What do you do after you've taken the Flexeril?

> A I usually just lay down. *If I have some housework to do, I'll run the dishwater (sic). Usually, it'll sit for a few minutes and then I'll clean up around the house as much as I can* and for the most part, though, I'll down (sic) on the couch and read a book.

AR at 52-53 (emphasis added). And the fact that plaintiff's pain requires prescription drugs to manage does not weigh against the ALJ's finding. He specifically noted plaintiff's use of those drugs and her ability to engage in daily activities while using that medication. *Id.* at 23.

Lastly, the ALJ cited plaintiff's ability to manage her back symptoms and engage in substantial gainful activity as recently as 2007. *Id.* at 25-26. The court agrees with plaintiff that her ability to work between 2003 and 2007, years before the alleged onset of disability in 2011, does not establish a clear and convincing for rejecting her testimony. Nevertheless, the ALJ's reliance on this factor was harmless where, as noted above, he properly cited other rationales for discounting her claims. *See Batson v. Comm'r*, 359 F.3d at 1195-97 (ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but such error was harmless because the ALJ's remaining reasons and ultimate credibility determination were adequately supported by substantial evidence in the record); *see also Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008) (finding that the appropriate harmless error inquiry is "whether the ALJ's decision remains legally valid, despite such error.").

**B.** **Failure to Properly Account for Plaintiff's Limitations in Concentration and Pace**

**1.** **Relevant Legal Standards**

An RFC "is the most [a claimant] can still do despite [his] limitations" and it is "based on all the relevant evidence in [the claimant's] case record." 20 C.F.R. § 404.1545(a)(1). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545). The Ninth Circuit has previously found that moderate mental impairments and the ability to perform simple tasks may be translated into an RFC which allows for simple, repetitive work. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-76 (9th Cir. 2008).

/////

### 2. **Background**

Plaintiff notes that the ALJ found that "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties." ECF No. 15 at 23; AR at 21. She argues that this finding, accompanied by a limitation to simple, repetitive tasks (*id.* at 22, 26), was insufficient to find jobs at step five of the analysis. ECF No. 15 at 23.

### 3. **Analysis**

Plaintiff's argument on this point is unpersuasive. In *Stubbs-Danielson*, the Ninth Circuit held that the ALJ adequately accounted for a plaintiff's moderate pace limitations by imposing a limitation to simple tasks, as the ALJ did here. 539 F.3d at 1173-74. In *Stubbs-Danielson*, the court found that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Id.* at 1174. Here, two physicians found that plaintiff had moderate limitations in concentration, persistence, or pace and translated these findings into an ability to "implement simple instructions with adequate persistence/pace in order to complete usual work schedules." AR at 112, 148. Thus, the ALJ did not err in this respect.

## IV. **Conclusion**

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is GRANTED;

3. The Commissioner's decision is affirmed; and

4. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: March 15, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE